IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


GC FINANCE, LLC[1]                )
                                  )
v.                                )       No. 3:06-0913
                                  )
OLD REPUBLIC NATIONAL TITLE       )
INSURANCE COMPANY                 )



**<u>MEMORANDUM</u>**


Pending before the Court is the defendant's Motion for Summary Judgment (Docket Entry No. 26) filed on behalf of Old Republic National Title Insurance Company (hereinafter "Old Republic" or "defendant") to which the plaintiff filed a response (Docket Entry No. 37), as well as the plaintiff's Motion for Partial Summary Judgment filed on behalf of GC Finance, LLC ("GC Finance" or "plaintiff") (Docket Entry No. 30) to which the defendant filed a response (Docket Entry No. 41).  Oral argument on both motions was held on January 15, 2008.

---

[1]The Governors Club Property Owners Association was originally a plaintiff in this lawsuit, but by stipulation filed November 6, 2007 (Docket Entry No. 23), and order entered November 13, 2007 (Docket Entry No. 24), the claims brought by The Governors Club Property Owners Association were dismissed, and GC Finance, LLC became the sole remaining plaintiff.

# I. BACKGROUND AND PROCEDURAL HISTORY[2]

## A. The Edmondson easement

The facts underlying this litigation stretch back into the 1950s, when Columbia Gulf Transmission Company ("Columbia Gulf"), a natural gas transmission company, sought permission to place its pipelines under farmland that was owned by the Edmondson and Stevens families. Columbia Gulf successfully obtained six right-of-way agreements ("the original easements") providing easements granted by H.J. and Annie Mary Edmondson, and W.A. and Ethel Stevens, in the years 1953, 1962, 1967, and 1968. The parties agree that for purposes of this case, the only relevant easement of the original six is the agreement executed between Columbia Gulf and the Edmondsons in 1953 ("the Edmondson easement"), which reads, in pertinent part:

> By the terms of this agreement, Grantee [Columbia Gulf] has the right to lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace at any time or from time to time one or more additional lines of pipe and appurtenance thereto, said additional lines not to necessarily parallel any existing line laid under the terms of this agreement. . . .
>
> [. . .]
>
> TO HAVE AND TO HOLD unto the Grantee, its successors and assigns, with ingress to and egress from the premises for the purposes herein granted.
>
> The said Grantor is to fully use and enjoy said premises except for the purposes herein granted to the said Grantee and provided the said Grantor shall not construct or permit to be constructed any house, structures or obstructions on or over or that will interfere with the construction, maintenance or operation of any pipe line or appurtenances constructed hereunder and will not change the grade of such pipe line.
>
> Grantee hereby agrees to bury the pipe lines to a sufficient depth so as not to interfere with cultivation of the soil and agrees to pay for any damage to growing

---

[2] Unless otherwise specified, the facts as set forth in this section are taken from the complaint and attached exhibits (Docket Entry No. 1), the parties' joint stipulation of facts (Docket Entry No. 25), and the plaintiff's response to the defendant's statement of undisputed material facts in support of the defendant's motion for summary judgment (Docket Entry No. 40).

Case 3:06-cv-00913   Document 44   Filed 09/30/08   Page 2 of 21 PageID #: 406

crops and fences which may arise from the construction, maintenance and operation of said lines. . . .

Docket Entry No. 1, Exhibit E, at 2.


### B. From farmland and the Edmondson easement to golf course and the Partial Release

Columbia Gulf laid its pipelines under the Edmondson's farmland in a setting that was then bucolic, but which with the passing years would become an exclusive golf course and gated community in an affluent suburb of Nashville, Tennessee. During the late 1980s and early 1990s, investors and developers became interested in the property. The Governors Club, LLC, a predecessor-in-interest to GC Finance, in the process of developing the Property for use as a golf course, entered into a "Partial Release of Right-of-Way Agreement" dated January 15, 1997 (the "Partial Release") with Columbia Gulf,[3] and recorded in Williamson County, Tennessee, on January 22, 1998.[4]

The Partial Release identified the six original right-of-way agreements, and pursuant to the Partial Release, Columbia Gulf released "all of its right, title and interest in and to" the Property, *except for* a strip of land approximately 175 feet in width and running across portions of the Golf Course ("the Encumbered Strip"). The Encumbered Strip is the same land as described in the Edmondson easement, the same portion of the property that contains the golf course, the only

---

[3] Counsel for the plaintiff indicated that he believed that the date listed on the Partial Release as January 15, 1997, one year previous to the date of recording, was a typographical error. There are numerous other references in the record to the date of signing as either 1997 or 1998. However, the parties have stipulated that the Partial Release was signed and recorded in January 1998. Under either scenario, whether signed in 1997 or 1998, the Partial Release was executed and recorded prior to the date of issuance of the Policy at issue in this case.

[4] The parties negotiated a preliminary agreement memorialized in a "no objection letter." However, the operative document for purposes of this case is the Partial Release.

portion of the six original easements that contained or ever would contain pipelines constructed by

Columbia Gulf, and the locus of the dispute in the present litigation. The Partial Release (Exhibit

C to Docket Entry No. 1) reads in pertinent part:

> [Columbia Gulf] is retaining such easements pursuant to the terms and provisions by which they were acquired.

> No excavation, change of grade, or water impoundment will be made on the right-of-way hereinabove excepted from the Partial Release, and [The Governor's Club] will neither build, cause, or allow to be built, any buildings, roads, driveways, structures, obstructions, nor plant trees on the right-of-way hereinabove excepted from this partial Release unless the written consent of [Columbia Gulf] is first had and obtained by [The Governor's Club] . . . .

> . . . all necessary provisions and arrangements will be made and warranted by THE GOVERNOR'S CLUB, LLC for ingress to and egress from the premises of the "gated" subdivision of THE GOVERNOR'S CLUB AT PLEASANT HILL at any time for personnel, vehicles, equipment, and materials of Columbia Gulf Transmission Company, its contractors, and vendors when Columbia Gulf Transmission Company determines that it is necessary for the operations, maintenance, inspection, construction, and upgrading of its pipelines . . . .

> Should any construction, class location upgrade, and/or maintenance work be required on its pipelines, Columbia Gulf will not be responsible for any damages to the facilities, including, but not limited to, golf fairways, greens, walking trails, roadways, and utilities constructed by [The Governor's Club] on or near the defined rights-of-way, that are the result of Columbia Gulf's action. Columbia Gulf's sole obligation will be to restore all excavations necessitated by the original grade which existed prior to the construction of [The Governor's Club's] facilities. [The Governor's Club] shall at its expense be responsible for the repair and/or restoration of any of [The Governor's Club's] damaged facilities.

> [. . .]

> It is understood and agreed that the execution and delivery of this instrument does not constitute and shall never be construed or deemed to be a release or surrender of [Columbia Gulf] of any of its right, title, and interest in and to that portion of the land not expressly released herein. The said Right-of-Way Agreements hereinabove described shall continue in full force and effect as a valid and subsisting Right-of-Way Agreement as to all its terms and provisions with regard to that portion of the land not specifically released by this instrument.

4

The Partial Release narrowed the scope of all of the existing easements, and Columbia Gulf effectively relinquished their rights to all but the 175 foot strip containing their existing pipeline.[5]

**C.  GC Finance, Old Republic, a Policy of Title Insurance, and the Underlying Litigation**

On July 1, 1998, The Governor's Club gave a Note and Deed of Trust to GC Finance, and Old Republic, the defendant in this action, issued a title insurance policy, Policy No. MM2516072 ("the Policy"), to GC Finance in the face amount of $23 million.  On August 3, 2000, the policy date was amended and the amount was amended to $27,452,536.22.  On August 15, 2000, GC Finance acquired an ownership interest in the property covered by the Policy ("the Property" or "golf course") by foreclosure for a cost of $15 million.

The Policy issued by Old Republic guaranteed GC Finance that Old Republic would indemnify and defend GC Finance against all defects or encumbrances on the title to the property *except for* those specifically listed in the Policy "or otherwise excluded under some general operation, or operation of some general exclusion."  The Policy specifically listed the six original Right-of-Way Agreements identified in the Partial Release, including the Edmondson easement, as exceptions from coverage under the Policy.  However, the Policy does not list as an exception from coverage or specifically exclude the Partial Release.

―――――――――――

[5] The parties maintain, and the Partial Release so states, that the other easements "remained in effect."  However, it is not clear to the Court how these easements remained in effect after the execution of the Partial Release, which by the admission of both parties, narrowed the area of concern strictly to that property governed by the 1953 Edmondson easement.  Presumably, the areas once encompassed by the remaining five easements have now been developed as part of the golf course and residential development, representing changes that would have only been possible through a superseding document such as the Partial Release or other waiver or relinquishment of the previous restrictions present under the original easements.

In 2004, Columbia Gulf attempted to gain access to its pipeline beneath the golf course to perform federally-mandated upgrades. The golf course objected, seeking a delay of construction to minimize the disruption during peak golf season. On October 21, 2004, Columbia Gulf filed suit (the "underlying litigation") against GC Finance and others in the Circuit Court for Williamson County, Tennessee, seeking a declaratory judgment, injunctive relief, and damages, claiming a right of access to the property under the terms of the Partial Release. *See Columbia Gulf Transmission Co. v. The Governors Club Property Owners Association, et al.*, 2006 WL 2449909 (Tenn. Ct. App. 2006).

On December 8, 2004, GC Finance wrote a letter to Old Republic requesting that Old Republic provide a defense in the lawsuit filed by Columbia Gulf, stating that the lawsuit concerned the Partial Release and that the Partial Release was not listed as an exclusion or exception from the Policy. *See* Docket Entry No. 25, Exhibit 2 at 2-3. On January 5, 2005, Old Republic issued a letter denying liability for GC Finance's claim. *See id.*, Exhibit 1 at 2-3. On February 7, 2006, GC Finance again wrote to Old Republic, notifying their insurer that Columbia Gulf had exercised its rights under the Partial Release and in the process caused substantial damage to the Property, estimated in the range of $1.1 to $1.3 million, plus additional damages caused by interruption of use. GC Finance claimed a loss of at least $1.3 million. *See id.* Exhibit 2 at 4-5. Old Republic responded on March 6, 2006, pointing out that the original easements were disclosed in the Policy, that the easements "were not released" by the Partial Release, were "the cause of the claim" and "shown as exceptions and exclusion to title" in the Policy, and, therefore, again denied coverage or any liability for damages. *See id.* Exhibit 1 at 4-5.

In deciding the underlying litigation, the state trial court found that the grant of easement to Columbia Gulf was "clear and unambiguous," and found in favor of Columbia Gulf based on the

6

language in the Partial Release. *See Columbia Gulf* at *4-*5. This decision was affirmed by the Tennessee Court of Appeals on August 21, 2006, based explicitly on the language of the Partial Release, particularly the clause stating that ingress and egress would be provided "at any time . . . [Columbia Gulf] determines it is necessary." *Id.* at *4.

Based on the language of the Partial Release and the rulings in the underlying litigation, Columbia Gulf refused to pay the plaintiff for the substantial damage caused to the golf course during its pipeline upgrade. GC Finance unsuccessfully sought payment from its title insurer, Old Republic, for the expenses associated with the underlying litigation and for indemnification.

### D.  The instant lawsuit, allegations, and defenses

On September 25, 2006, GC Finance filed the instant suit to recover from Old Republic under a theory of breach of contract. *See* Docket Entry No. 1. Specifically, GC Finance alleged that Old Republic breached the Policy by failing to accept their tender of defense of the underlying litigation, which arose out of the Partial Release. *Id.* at 2. Further, GC Finance alleged that Old Republic breached the terms of the Policy when it failed to indemnify it for the damages incurred as a result of Columbia Gulf's exercise of its rights under the Partial Release, i.e., repairs to the golf course caused during the pipeline upgrade. *Id.* GC Finance also sought bad faith damages pursuant to Tenn. Code Ann. § 56-7-105. *Id.* at 3.

7

### 1. Old Republic's motion for summary judgment

Old Republic filed a motion for summary judgment seeking dismissal of all claims asserted by GC Finance. Docket Entry No. 26. Old Republic asserts that it had no duty to defend GC Finance in the underlying litigation with Columbia Gulf and is therefore not liable for any damages resulting from the lawsuit. *Id*. at 1-2. It is Old Republic's position that the Partial Release did not "further change or eliminate, in any way, the rights, duties or liabilities" of the involved parties as established by the original, disclosed easements. *Id*. at 1. In fact, Old Republic maintains that the Partial Release did not place any additional burdens or responsibilities on the plaintiff, and that the plaintiff received more rights under the Partial Release, which was executed for the plaintiff's benefit in that it allowed the plaintiff to construct the golf course. *See* Docket Entry No. 27, at 12-14. Old Republic essentially asserts that the Partial Release changed nothing and, because the original easements were listed as exceptions from coverage, GC Finance did not suffer any covered loss or damage.

Additionally, Old Republic argues as part of its defense that GC Finance knew about the existence of the Partial Release and therefore must have "assumed or agreed" to its terms, rendering the Partial Release excluded from coverage under a separate clause of the Policy. In support of this argument, Old Republic relies upon the affidavit of David Schwab, a real estate developer involved with the Property during the earlier stages of the negotiations and development. Docket Entry No. 26 Exhibit 1, at 3. In his affidavit Mr. Schwab attests that he "specifically remember[s]" a meeting on an unspecified date between officers or agents of GC Finance and that these officers or agents "knew of the . . . Partial Release." *Id*. Old Republic again advanced this position in its response to the plaintiff's motion for partial summary judgment. *See* Docket Entry No. 41, at 5. However, at oral argument, Old Republic's counsel conceded that Old Republic had been mistaken

Case 3:06-cv-00913   Document 44   Filed 09/30/08   Page 8 of 21 PageID #: 412

in their understanding of when GC Finance knew about the Partial Release, acknowledging that there was "a material factual dispute about when [GC Finance] knew," "about when they knew or if they knew, or if they helped, agreed and created this [P]artial [R]elease." Docket Entry No. 43, at 50-51. Because there is a material factual dispute as to this issue, summary judgment is not appropriate and is denied as to this issue, and those portions of the parties' briefs relating to GC Finance's knowledge or alleged "adoption" of the Partial Release are not addressed further in this opinion.

The plaintiff filed a response to the defendant's motion for summary judgment. Docket Entry No. 37. The plaintiff avers that insurance contracts should be construed against the insurer and that Old Republic has the burden of establishing that an exception or exclusion applied to GC Finance's claim for coverage under the Policy and that Old Republic has failed to carry that burden. *Id*. at 3-4. GC Finance asserts that the defendant did, in fact, have a duty to defend them in the underlying litigation. It is the plaintiff's position that the Partial Release should have been disclosed by the Policy and that it did, in fact, materially change the relationship and obligations of the parties. *Id*. at 4-5. Columbia Gulf relied principally on the undisclosed Partial Release when it filed suit against the GC Finance in the underlying litigation, and the Tennessee Court of Appeals similarly relied upon its language in upholding the trial court's finding as against GC Finance. *Id*. at 5. The plaintiff maintains that the Partial Release caused GC Finance to incur damage and injury, and because it was not listed as an exception to coverage under the Policy, Old Republic breached its obligations under the Policy to indemnify and defend.

9

## 2. The plaintiff's motion for partial summary judgment

In its motion for partial summary judgment, the plaintiff argues that GC Finance is entitled to summary judgment on the issue of breach of contract arising from Old Republic's failure and refusal to defend the lawsuit brought by Columbia Gulf, as well as its refusal to indemnify the plaintiff for its legal expenses in defending that lawsuit.[6]  Docket Entry No. 30.

The plaintiff asserts that by the terms of the Policy, the scope of coverage extends to "loss or damage . . . sustained or incurred by the insured by reason of . . . any defect in or lien or encumbrance on the title."  Docket Entry No. 31, at 3 (quoting Docket Entry No. 1, Exhibit B).  The plaintiff acknowledged that the scope of coverage was limited by a set of general exclusions and exceptions, and that the six original easements were listed as exceptions, but notes that the Partial Release was not.  *Id*. at 3-4.  It is the plaintiff's position that the Partial Release materially altered the rights and obligations of the parties in material ways with respect to use, damages, and access.  *Id*. at 4-6.  Furthermore, the plaintiff argues that the underlying litigation arose out of the Partial Release.  *Id*. at 6.  The plaintiff tendered the defense of the underlying litigation to Old Republic, but Old Republic refused to either provide a defense or reimburse the plaintiff for any of its legal fees or expenses.  *Id*. at 7.  GC Finance lost the underlying litigation and suffered additional damages when Columbia Gulf exercised its rights under the Partial Release and performed upgrades to its pipe lines, causing damages to the golf course.  Old Republic has refused to pay for these damages.  Id.

The plaintiff contends that the duty to defend is separate from and broader than the duty to indemnify.  *Id*. at 17.  The plaintiff argues that an insurer has a duty to defend its insured unless it

---

[6] The plaintiff is not seeking summary judgment on the issues of damages or of the defendant's liability for the statutory bad faith penalty.

is apparent from the complaint that the claims fail to state facts that bring the case within the scope of the policy. Actual liability is not an issue, and any doubts must be resolved in favor of the insured. The plaintiff maintains that when the insurer is obligated to defend and fails or refuses to do so, the insurer is liable for the cost of defense. *Id.*

In the defendant's response to the plaintiff's motion for partial summary judgment, Old Republic accuses the plaintiff of "mischaracterizing" the stipulated facts, and asserts that Old Republic "certainly does *not* admit that the Policy failed to except the Partial Release from coverage." Docket Entry No. 41 at 2. However, the Court finds that the parties specifically stipulated to *exactly* this in the Stipulated Facts which were signed by representatives of both parties and filed with this Court on November 14, 2007. Docket Entry No. 25, at 4 ("The Policy did not list as an "Exception from Coverage" or specifically list as an exclusion the Partial Release.").

The main thrust of Old Republic's response is the same as the argument set forth in its own motion for summary judgment: that the Partial Release did not "materially change" the rights and liabilities of the parties as they existed under the Edmondson easement, and therefore, the Partial Release "was not an encumbrance" on the Property. Docket Entry No. 41, at 2. The argument that the Partial Release may not constitute an "encumbrance" is mentioned in the initial denial letters from Old Republic, but this language did not appear in the defendant's previous filings. However, the defendant relied heavily upon this line of reasoning during oral argument, prompting some surprise from the plaintiff's counsel. The Court interprets the "encumbrance" argument to merely be a restatement or variation of Old Republic's position that the Partial Release did not materially alter the rights of the parties.[7]

_____

[7] To the extent that Old Republic might have been attempting to make a more nuanced, technical argument about the definition of an "encumbrance" in the realm of title law, Old Republic

11

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which it has the burden, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*,

---

has failed to proffer any definitions, cases, or other authority tending to show that an "encumbrance" is anything more specialized than an easement that concerns the property in question, and the Court declines to further belabor that point in the absence of such argument from the parties.

12

285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the [finder of fact] could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fairminded finder of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir.1999) (citing *Anderson*, 477 U.S. At 247-49).

III.     ANALYSIS

   A.  The plaintiff's motion for partial summary judgment

   The plaintiff asserts that there is no genuine issue of material fact as to the defendant's liability for breach of contract and that the plaintiff is entitled to judgment in its favor as a matter of law. Specifically, the plaintiff alleges that the defendant had a clear cut duty to defend the plaintiff in the underlying litigation and that the defendant has an obligation to indemnify the plaintiff for damages.

      1.  Duty to defend

   As outlined above, the factual background relevant to these claims involves a certain parcel of land subject to six original easements, executed between 1953 and 1968, and a Partial Release, executed and duly recorded in 1998, that "released" some of the original easements and otherwise altered the rights of the involved parties. GC Finance acquired the Property and purchased title

13

insurance from Old Republic.  The Policy issued by Old Republic insured, *inter alia*, "against loss or damage . . . sustained or incurred by the insured by reason of . . . any defect in or lien or encumbrance on the title."  *See* Docket Entry No. 1, Exhibit B.  The Policy limited its scope of coverage by listing exclusions and exceptions in a set of Schedules attached to the Policy.  *Id*.  The parties have stipulated that the Policy specifically listed the six original easements as exceptions from coverage in Schedule B-I, but that the Policy did not list the Partial Release as an exception from coverage or specifically list it as an exclusion.  *See* Docket Entry No. 25, at 4-6.  The Policy also contained a clause excepting from coverage "[d]efects, liens, encumbrances, adverse claims, or other matters" that were "created, suffered, assumed or agreed to by the insured claimant," and further excluded matters "resulting in no loss or damage to the insured claimant."  *See id*. at 6.

An insurer's duty to defend and indemnify are two separate obligations.  *See Drexel Chemical Co. v. Bituminous Ins. Co*., 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) (quoting *Jackson Housing Authority v. Auto-Owners Ins. Co.*, 686 S.W.2d 917 (Tenn. App. 1984)).  The duty to defend is broader than the duty to indemnify.  The pertinent inquiry is whether the allegations of the complaint are covered under the policy.  If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy.  *Id*. (quoting *U.S. Fidelity & Guar. Co. v. Murray Ohio Manuf. Co.*, 693 F. Supp. 617 (M.D. Tenn. 1988)).  An insurer may not properly refuse to defend an action against its insured unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage." *Id*. (quoting *Glens Falls Ins. Co. v. Happy Day Laundry, Inc*., 1989 WL 91082 (Tenn. App. August 14, 1989).  Stated another way,

> [i]t is accepted in the overwhelming majority of jurisdictions that the obligation of
> a liability insurance company to defend an action brought against the insured by a
> third party is to be determined *solely* by the allegations contained in the complaint

14

> in that action. . . . Accordingly, if the allegations . . . are within the risk insured against and there is a potential basis for recovery, then [the insurer] must defend . . . , regardless of the actual facts or the ultimate grounds on which . . . liability to the injured parties may be predicated. . . . In any event, the pleading test for determination of the duty to defend is based exclusively on the facts as *alleged* rather than on the facts as they actually are. . . .

*St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) (emphasis in original) (quoting *American Policyholders' Ins. Co. v. Cumberland Cold Storage Co*., 373 A.2d 247 (Me. 1977)). Finally, "an insurer has a duty to defend against even those claims that are without merit." *Jackson Housing Authority v. Auto-Owners Ins. Co*., 686 S.W.2d 917, 922 (Tenn. Ct. App. 1984).

Even assuming the facts in the light most favorable to Old Republic for purposes of the plaintiff's motion, it is clear that Old Republic had a duty to defend GC Finance in the underlying litigation. The underlying litigation arose when Columbia Gulf sought to enforce its rights under the Partial Release and perform an upgrade on its pipelines within the Encumbered Strip. When the golf course attempted to delay construction because it was the height of its golf season, Columbia Gulf filed suit on October 21, 2004, in Circuit Court for Williamson County, Tennessee, seeking a declaratory judgment, injunctive relief, and damages. Docket Entry No. 25, at 4. The parties stipulated that Columbia Gulf relied upon and quoted extensively from the Partial Release in their complaint. *Id*. at 4-5. Specifically, Columbia Gulf relied upon its right of access as articulated in the Partial Release. *Id.* GC Finance notified Old Republic of the pending claim against them via a letter dated December 8, 2004. Docket Entry No. 25, Exhibit 2. GC Finance attached a copy of the complaint and stated in its letter that "[t]he claims made by Columbia Gulf . . . relates [sic] to the attempted enforcement by Columbia Gulf [] of the Partial Release of Right-of-Way Agreement

15

. . . [and] [t]he Partial Release was not listed as a[n] . . . exception on any of the Policies." GC Finance specifically request a defense in the litigation. *Id.*

Old Republic responded on January 5, 2005, refusing to provide a defense, setting forth a version of its current defense, namely, that the easements were excluded and the Partial Release did not materially alter the easements, and therefore denying liability for the claim. Docket Entry No. 25, Exhibit 1, at 2-3.

As set forth above, the duty to defend arises from the allegations made in the complaint with no regard for the merits, likelihood of success, or potential defenses to those claims. Rather inexplicably, Old Republic attempted from the outset to assert a complicated legal defense to liability under the Policy in letters to its own insured. Counsel for Old Republic freely admitted at oral argument that the title search conducted when the Policy was issued was faulty, stating that "[t]here's no dispute that when whoever searched the title for Old Republic, for whatever reason, failed to list or find as an exception, to coverage, this partial release. Okay, we know that." Docket Entry No. 43, at 37. Old Republic failed to find the Partial Release when it performed its title search incident to issuing its Policy of title insurance. When litigation directly implicating the Partial Release arose, rather than admitting that mistake and providing the defense guaranteed under the terms of the Policy and Tennessee law, Old Republic took a hard line, refusing to defend the litigation.

There exists no material issue of fact as to whether Old Republic had a duty to defend GC Finance in the underlying litigation. GC Finance is entitled to summary judgment on this issue. To the extent that additional findings may be necessary to determine the appropriate amount of damages flowing from this breach, the Court declines to award a specific amount at this time.

16

## 2. Duty to indemnify

The plaintiff argues that Old Republic has a duty to indemnify them as against the losses suffered as a result of Old Republic's breach of the insurance policy, namely, failing to disclose the Partial Release. While the Court does find that Old Republic breached the Policy with respect to their duty to defend the plaintiff, there is insufficient proof in the record with respect to the indemnity issue, and the Court declines to grant summary judgment.

## B. The defendant's motion for summary judgment

The defendant's motion rests on its essential defense that the Partial Release did not alter the rights of the parties as they existed under the original easements. The parties disagree on this essential issue. In fact, the assertion that the Partial Release did not materially alter the relationship of the parties as it existed under the easements is central to Old Republic's initial denial of a duty to defend the underlying litigation and indemnify GC Finance for damages incurred, and Old Republic is currently relying on this position in defending the plaintiff's claims in the instant suit. Old Republic argues that because the Partial Release did not materially alter the relationship of the parties, it was not an "encumbrance" that had to be included in the Partial Release.

The plaintiff argues that the Partial Release changed the existing rights and obligations of the parties in three key areas: access, use, and damages. Docket Entry No. 31 at 4.

With respect to the right of access to the property, the original easement contained a simple, general statement with the magic language granting "ingress and egress" to the holder of the easement. *See* Docket Entry No. 1, Exhibit E. The Partial Release, however, provided that:

> all necessary provisions and arrangements will be made and warranted by [the golf course] for ingress to and egress from the premises . . . at any time for personnel, vehicles, equipment and materials of [Columbia Gulf], its contractors, and vendors

17

> when [Columbia Gulf] determines that it is necessary for the operations, maintenance, inspection, construction, and upgrading of its pipelines and facilities . . .

*See* Docket Entry No. 1, Exhibit C. The right of access was a key issue in the underlying litigation, and Columbia Gulf expressly relied on this provision in its complaint. Both the trial court and the Tennessee Court of Appeals found this language dispositive in rendering their respective decisions against GC Finance and in favor of Columbia Gulf, finding the language of the Partial Release to be "clear and unambiguous."

With regard to the right of use under the respective agreements, under the original easement, the property owner was forbidden to "construct or permit to be constructed any house, structures or obstructions on or over or that will interfere with the construction, maintenance or operation of any pipe line or appurtenance constructed hereunder and shall not change the grade of such pipe line." Docket Entry No. 1, Exhibit E. Under the Partial Release, the property owner was instructed that

> No excavation, change of grade, or water impoundment will be made on the right-of-way hereinabove excepted from the Partial Release, and [property owner] will neither build, cause, or allow to be built, any buildings, roads, driveways, structures, obstructions, nor plant trees on the right-of-way . . . unless the written consent of [the holder of the easement] is first had and obtained by [the owner of the property] . . .

*Id.* at Exhibit C.

Finally, with respect to the issue of damages, the original easement provided that Columbia Gulf "agree[d] to pay for any damage to growing crops and fences which may arise from the construction, maintenance and operation of [its pipelines]." *Id*. at Exhibit E. The Partial Release stipulated that:

> Columbia Gulf will not be responsible for any damages to the facilities, including, but not limited to, golf fairways, greens, walking trails, roadways, and utilities construed by [the property owner] on or near the defined rights-of-way, that are the result of Columbia Gulf's action. Columbia Gulf's sole obligation will be to restore all excavations necessitated by the original grade which existed prior to the

18

construction of [the property owner's] facilities. [The property owner] shall at its expense be responsible for the repair and/or restoration of any of [their own] damaged facilities.

*Id.* at Exhibit C.

Specifically, under the terms of the Edmondson easement, the property owner was prohibited from building structures that would obstruct the easement. Under the Partial Release, the property owner was specifically prohibited from "excavation, change of grade, or water impoundment," and additionally prohibited from building not just "houses or structures," but "roads, driveways," and even from planting trees. The damages provision in the Edmondson easement which provided that Columbia Gulf would "pay for any damages to growing crops and fences" was replaced in the Partial Release by a disclaimer stating that "Columbia Gulf will not be responsible for any damages to the facilities . . . [and if Columbia Gulf does cause any damage,] its sole obligation will be to restore the original grade of the property." Finally, as opposed to the Edmondson easement, which gave Columbia Gulf a right of "ingress and egress," the Partial Release granted access "at any time . . . when Columbia Gulf determines that it is necessary." Essentially, the Partial Release modified the respective rights of the parties with respect to use, damages, and access.

The Court finds that the defendant has failed to carry its burden in proving that there is no dispute that the Partial Release did not alter the parties' rights as they existed under the original easements. The Partial Release did, in fact, modify the relationship between the parties in a material way. As an initial matter, the mere existence of the Partial Release weighs in favor of its materiality. Sophisticated business entities do not make a habit of analyzing decades-old easements and crafting new agreements concerning multi-million dollar property developments that house a major gas pipeline merely to restate existing rights. Moreover, the defendant's counter-argument is internally inconsistent. In almost the same breath that Old Republic insists that all of the above

19

language changed nothing, they assert in their response to the plaintiff's motion for partial summary judgment that "the Partial Release did not increase any rights of Columbia Gulf but [] the Partial Release, in fact, *limited* Columbia Gulf's rights and *increased* the Plaintiff's rights under the original easement." Docket Entry No. 41, at 3 (emphasis in original). The fact that Old Republic asserts that the Partial Release shifted rights in the plaintiff's favor undermines their position that the Partial Release did not alter the agreement of the parties.

The Partial Release changed the relationship between the owner of the Property and Columbia Gulf. The parties carefully negotiated and crafted the Partial Release in anticipation of the development of the Property as a golf course, and the Partial Release represents an important bargained-for exchange setting out the respective rights and obligations of the involved parties. The Partial Release totally replaced and preempted the existing original easements, none of which survived the execution of the Partial Release in anything resembling its original state. Although the Edmondson easement survived as incorporated by the Partial Release, it was changed in essential and material ways as outlined above. Therefore, Old Republic's argument that the Partial Release was irrelevant fails.

Old Republic's motion should therefore be denied. Old Republic did have a duty to defend GC Finance in the underlying litigation. Old Republic has failed to demonstrate that the Partial Release did not materially alter the relationship of the parties, and the Court finds that there are no material issues of facts as to this issue. As a matter of law, the Partial Release did materially alter the rights of the parties, and this case should be allowed to proceed to resolve the remaining claims and the issue of damages.

20

**IV.  CONCLUSION**

The plaintiff's motion for partial summary judgment is GRANTED IN PART to the extent that the Court finds that the defendant had a duty to defend the plaintiff and that the defendant breached that duty, but DENIED IN PART on the issue of whether the defendant had a duty to indemnify, and the defendant breached that duty.  The defendant's motion for summary judgment is DENIED.

An appropriate order will enter.

Juliet Griffin
United States Magistrate Judge