IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GC FINANCE, LLC[1]            )
                              )   No. 3:06-0913
v.                            )
                              )
OLD REPUBLIC NATIONAL TITLE   )
INSURANCE COMPANY             )

MEMORANDUM

The defendant seeks to alter or amend the memorandum and order entered September 30, 2008 (Docket Entry Nos. 44-45), and, alternatively, to certify certain issues on interlocutory appeal to the Sixth Circuit, and, alternatively, to clarify the remaining issues for trial.

The factual background of this case, set out at some length in the previous memorandum on pages 1-7, is incorporated herein, and will not be repeated in detail.

A motion filed under Rule 59(e) of the Federal Rules of Civil Procedure is not a motion to reconsider a ruling but rather a motion to alter or amend the judgment to correct a clear error of law, consider newly discovered evidence or an intervening change in the controlling law, or otherwise to prevent manifest injustice. GenCorp., Inc. v. American Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999). Although the defendant does not dispute that the Court utilized the correct legal standard, it contends that the Court committed a clear error of law by misapplying the appropriate legal standard and thus manifest injustice resulted.

Specifically, the defendant argues that the Court failed to address the scope of the defendant's duty of coverage as provided in the title insurance policy issued on July 1, 1998, to the plaintiff. The defendant maintains that the Court used "post hac propter hoc" reasoning when it considered the fact that the defendant failed to find the 1997 Partial Release of Right-of-Way Agreement ("Partial

---

[1] The Governor's Club Property Owners Association was originally a plaintiff in this lawsuit, but by stipulation filed November 6, 2007 (Docket Entry No. 23), and order entered November 13, 2007 (Docket Entry No. 24), the claims brought by The Governor's Club Property Owners Association were dismissed, and GC Finance, LLC became the sole remaining plaintiff.

Release") executed between the Governors Club, LLC, the plaintiff's predecessor-in-interest, and Columbia Gulf Transmission Company ("Columbia"), in its title search incident to issuing the policy of title insurance. The defendant argues that the faulty title search is irrelevant because the "clear and unambiguous language" of the policy did not cover lawsuits arising from the Partial Release. Docket Entry No. 47, at 8.

The defendant also maintains that the Court erred in concluding that there was not sufficient proof in the record to determine whether or not the defendant had a duty to indemnify the plaintiff. The defendant argues that the "sufficiency of the record is irrelevant if coverage does not extend to an allegation regardless of whether it's truthful." Id. at 8-9. It is the defendant's position that the Court has already found all relevant facts and no more facts are needed to determine whether the defendant had a duty of indemnification. Of course, the defendant also argues that, since there was no duty to defend, there is no duty to indemnify.

The defendant quotes from the policy at issue, which provided that "SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS . . . [the defendant] insures . . . against loss or damage . . . sustained or incurred by the insured by reason of: . . . any defect in or lien or encumbrance on the title." (Capitalization in original.) Thus all easements listed in Schedule B were excepted from coverage, and the easement executed between Columbia and the Edmondsons[2] ("Edmondson Easement") was included in Schedule B. The Conditions and Stipulations provide that the defendant would provide a defense if a claim "adverse to the title or interest" were asserted against the insured, but "only as to those stated causes of action alleging a defect, lien, or encumbrance to other matters insured against by this policy." However, since the complaint filed

---

[2] The Edmondsons were former owners of the property, which was then farmland. The property was later developed by the Governors Club, LLC, the predecessor-in-interest to GC Finance, the plaintiff herein.

2

in the underlying lawsuit[3] did not refer to or describe the Partial Release as "an encumbrance, lien, easement, or right-of-way" but instead referred to the six original easements as the "Right-Of-Way Agreements" creating rights of Columbia on the property, the defendant argues that the underlying complaint did not "treat" the Partial Release as an encumbrance but rather relied on it "to maintain the rights created by the Edmondson Easement." Id. at 10-11.

Therefore, the defendant contends that, "[a]t most," the Partial Release modified and amended the Edmondson Easement, but did not replace it, encumber it or lessen its value. Id. at 11. The defendant further contends that the Partial Release actually increased the plaintiff's property value by releasing some of its control over the land by narrowing the encumbered land, thereby increasing the plaintiff's property value.

The defendant reasons that, because the modifications and amendments of the Partial Release did not lessen but rather increased the property value, the Partial Release cannot be considered an encumbrance covered under the policy since an encumbrance, by definition, lessens the value of property. In addition, the defendant points out that the complaint in the underlying action alleged that the Partial Release "retains the right of ingress and egress from its right-of-ways within the Governor's Club for maintenance, construction and conducting [a class location upgrade of Columbia's Pipelines and facilities]." Docket Entry No. 47, at 11. The defendant emphasizes the word "retains" as showing that the rights at issue were already established by the Edmondson Easement, and maintains that the only encumbrances alleged in the complaint in the underlying action were the six original easements, coverage for all of which were expressly excluded under the policy.

---

[3] The plaintiff herein refused to allow Columbia access to the property to perform a federally mandated upgrade project because the construction work would intervene with the golf course during the peak golf season. The underlying lawsuit was brought by Columbia in the Circuit Court for Williamson County, Tennessee, for declaratory judgment, claiming a right of access to the property that the plaintiff herein had denied. The trial court found that Columbia had the right of ingress and egress and enjoined the plaintiff herein from interfering with those rights. That decision was affirmed by the Tennessee Court of Appeals. See Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n, 2006 WL 2449909 (Tenn. Ct. App. Aug. 21, 2006).

3

The defendant also argues that the Court failed to recognize that the plaintiff itself "created the duty to defend by initiating the actions leading to Columbia's lawsuit," since the policy excludes from coverage "loss or damage, costs, attorneys' fees or expenses which arise by reason of . . . adverse claims . . . created, suffered, assumed or agreed to by the insured claimant." Id. at 12. According to the defendant, because the plaintiff wrongfully and intentionally denied Columbia access to the property, Columbia was forced to bring the lawsuit against the plaintiff herein. Since there was no defense to the underlying lawsuit, the defendant concludes that "this lawsuit for refusal to defend is essentially meaningless" and to "find otherwise would create a manifest injustice aiding [the plaintiff] who acted unjustifiably and unconscionably in the face of clear legal rights." Id. at 13.

In the alternative, the defendant argues that, if the Partial Release were an encumbrance, the defendant is still not required to provide a defense since the policy provided that "damage, costs, attorneys' fees or expenses which arise by reason of . . . encumbrances . . . resulting in no damage to the insured" are excluded. Id. at 14. Thus, according to the defendant, the Partial Release decreased the plaintiff's potential damage from the Edmondson Easement since the Partial Release decreased the area of the Edmonsdson Easement to 175 feet, and added an obligation on Columbia's part that was not in the Edmondson Easement. Whereas the Partial Release provided that Columbia was obligated to "restore all excavations necessitated by the original grade which existed prior to the construction of GRANTEE's facilities," under the Edmondson Easement, Columbia was only obligated to "pay for any damage to growing crops and fences which may arise from the construction, maintenance and operation of said [pipelines]." Id. at 15; Exhibits C and E to Complaint.

The defendant points out that this Court found that a major distinction between the Edmondson Easement and the Partial Release was language in the Partial Release allowing ingress and egress at any time. However, the defendant argues that the Edmondson Easement also provided for ingress and egress "at any time." The Edmondson Easement actually provides that Columbia has

4

"ingress to and egress from the premises for the purposes herein granted." The "purposes herein granted" were to "lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace at any time or from time to time one or more additional lines of pipe and appurtenance thereto . . . ." The defendant argues that, although the Partial Release may appear more restrictive because of the "specific obstructions it prohibits from being built on the easement," the Edmondson Easement also prohibited "structures or obstructions on or over or that will interfere with the construction maintenance or operation of any pipe line or appurtenance constructed and [the plaintiff] shall not change the grade of such pipe line." The defendant construes "excavation, change of grade, or water impoundment . . . building, roads, driveways, structures, or obstruction" prohibited by the Partial Release to be examples of the "obstructions" provided in the Edmondson Easement. Id. at 17.

In response, the plaintiff argues that the defendant has essentially "rehash[ed]" and "regurgitate[d]" its prior arguments, Docket Entry No. 48, at 2-3, and that this Court properly held that the Partial Release was an encumbrance, which was "at the heart of" the claims in the underlying lawsuit. Id. at 4. The plaintiff maintains that the Court correctly found that the underlying lawsuit "directly implicate[d] the Partial Release," a finding that is supported by the Tennessee Court of Appeals, which found that the "grant of easement to Columbia that is pivotal to this issue is the 1997 'Partial Release of Right-of-Way Agreement.'" Id. at 4; Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n, 2006 WL 2449909 (Tenn. Ct. App. Aug. 21, 2006). The plaintiff argues that it is not material that Columbia did not expressly assert in the underlying lawsuit that the Partial Release was an "encumbrance" and that the Court properly found that it was an "encumbrance." The plaintiff describes the "critical right" that Columbia sought to enforce as "its unfettered access to the premises without any temporal restriction or any application of a rule of reasonableness," found in the Partial Release, not the Edmondson Easement. Id. at 4-5.

5

The plaintiff also disagrees with the defendant's contention that the plaintiff was the cause of Columbia's claims against it, but rather contends that Columbia's claims and the underlying lawsuit resulted from Columbia's assertions of rights under the Partial Release, which the plaintiff characterizes, as did the Court, as an encumbrance that was not excepted from coverage under the policy. Id. at 5-6. The plaintiff also argues that it did suffer a loss or damage as a result of Columbia's assertions of rights under the Partial Release because Columbia sought access to the property at the height of the golf season which would have imposed a financial burden on the plaintiff and that, under the Edmondson Easement, Columbia was required to reimburse the plaintiff for physical damage to the golf course caused by Columbia, but such damages were not available under the Partial Release. Thus, the plaintiff maintains that the Court properly found that the Partial Release changed the Edmondson Easement "in essential and material ways." Id. at 6.

The Court agrees with the plaintiff that granting a Rule 59(e) motion should be done sparingly and that such motions are generally denied. However, after a review of the record and further consideration, the Court finds that it erred in the order granting summary judgment to the plaintiff.

The Court finds that it must agree with the defendant that the Partial Release was not an encumbrance. In its initial opinion, the Court interpreted the defendant's "'encumbrance' argument to merely be a restatement or variation of [the defendant's] position that the Partial Release did not materially alter the rights of the parties." Docket Entry No. 44, at 11. In a footnote, the Court noted that the defendant might have been attempting to "make a more nuanced, technical argument about the definition of "encumbrance' in the realm of title law," but that the defendant had not provided authority showing that an "encumbrance" is anything more specialized than "an easement that concerns the property in question." Id. at 11-12 n.7. In fact, the defendant has now defined an "encumbrance" as a "claim or liability . . . that may lessen its value." Docket Entry No. 47, at 11 (emphasis added). In its response, the plaintiff did not dispute this definition. Whereas the Court had initially considered an "encumbrance" as essentially synonymous with an "easement," the

6

defendant has focused the Court's attention to a "a more nuanced" interpretation. If the Partial Release is not an "encumbrance," there is no coverage.

The Court agrees with the plaintiff that it is immaterial whether or not Columbia referred to the Partial Release as an "encumbrance," and that Columbia did, in fact, rely upon the Partial Release to define its rights in the underlying lawsuit. As the Court previously found, the underlying lawsuit "directly implicat[ed] the Partial Release." Docket Entry No. 44, at 16. However, if the Partial Release did not lessen the value of the Edmondson Easement, the defendant is not obligated to defend or indemnify against claims arising from the Partial Release.

If the Partial Release was not an "encumbrance," the fact that the defendant did not find the Partial Release in its title search prior to issuing the policy at issue is not relevant. Therefore, the Court agrees with the defendant that it was error to have focused on the defendant's admission that it failed to find the Partial Release.

The Court previously focused on the changes to the "right of ingress and egress" in the Partial Release as materially altering the terms of the Edmondson Easement. The defendant, however, points to language in the complaint in the underlying lawsuit in which Columbia alleged that, by the Partial Release, it "retained" the "right of ingress and egress," suggesting that Columbia already had that right from the prior right-of-way easements, and that such right was simply "retained" in the Partial Release. Perhaps more significantly, Columbia alleged that the "Right-Of-Way Agreements, as modified and amended by the Partial Release" grant Columbia the right to alter and replace pipelines and the right to ingress and egress.

Upon further review and consideration, the Court agrees that the Partial Release did increase the property value since the land on which Columbia maintained an easement was reduced. In relying upon the distinctions between the Edmondson Easement and the Partial Release, the Court emphasized that the Partial Release allowed for ingress to and egress from the property by Columbia "at any time" when Columbia "determines that it is necessary for operations, maintenance, inspection, construction, and upgrading of its pipelines and facilities . . . ." Exhibit C to Complaint.

7

However, the Court finds, as the defendant urges, that the language in the Edmondson Easement granting Columbia "ingress to and egress from the premises" for to "lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace at any time or from time to time one of more additional lines of pipe" provides essentially the same right of ingress and egress.

The Court also previously found that the Partial Release had materially altered the terms of Edmondson Easement in terms of the use of the property by the plaintiff. As the Court noted, under the original easement, the plaintiff could not "construct or permit to be constructed any house, structures or obstructions on or over or that will interfere with the construction, maintenance or operation of any pipe line or appurtenance constructed hereunder [nor] change the grade of such pipe line." Docket Entry No. 44, at 18; Exhibit E to Complaint. Under the Partial Release, the plaintiff was prohibited from building, causing, or allowing to be built "any buildings, roads, driveways, structures, obstructions, nor plant trees" without Columbia's written consent. Docket Entry No. 44, at 18; Exhibit C to the Complaint. Although the Partial Release specified in detail the prohibited actions, those specific prohibitions are examples of what was already prohibited in the Edmondson Easement, defined generally as "any house, structure or obstruction" that would "interfere" with the construction, maintenance or operation of the pipe lines, and are more in line with the use of the property as a golf course rather than farmland that existed at the time of the Edmondson Easement.

The Court also previously found that the Partial Release materially altered the provisions of the Edmondson Easement by providing that Columbia would not be responsible for any damages to the property except to "restore all excavations necessitated by the original grade which existed prior to the construction of [the plaintiff's] facilities." Docket Entry No. 44, at 18-19; Exhibit C to the Complaint. In contrast, the Edmondson Easement provided that Columbia would pay for any damage "to growing crops and fences which may arise from the construction, maintenance and operation of [its pipelines]." Exhibit E to Complaint. As the defendant points out, the Partial Release recognized that the property was no longer farmland but was intended to be a golf course. Since there were no "growing crops" or fences, Columbia's obligation in the Edmondson Easement

to pay for damages to "growing crops" or fences was outmoded, if not illusory. As the defendant contends, Columbia incurred more obligations that could inure to the plaintiff's benefit under the Partial Release than under the Edmondson Easement.

The plaintiff argues that it suffered loss and damages as a result of Columbia's assertion of rights under the Partial Release. While that is true, the issue is not whether the plaintiff suffered loss and damages, but whether Columbia asserted rights that were specified in the Partial Release that were not already included in the Edmondson Easement. If those rights upon which Columbia relied were already provided in the Edmondson Easement, the defendant has no duty to defend or indemnify the plaintiff under the policy. The Court finds, after further consideration, that it was error to conclude that the Partial Release materially altered the rights of the plaintiff from those rights established by the Edmondson Easement, and that, as a result, the Partial Release was not an encumbrance under the terms of the policy and that the plaintiff incurred no greater loss or damage than under the terms of the Edmondson Easement.[4]

Accordingly, the Court's prior decision is vacated, and summary judgment is awarded to the defendant. The defendant's alternative requests for the Court to certify the case for interlocutory appeal and to clarify the remaining issues are rendered moot.

An appropriate order will enter.

JULIET GRIFFIN
United States Magistrate Judge

---

[4] The Court finds that it is not necessary to address the defendant's argument that there is no policy coverage because the plaintiff itself created the duty to defend by initiating the actions leading to the underlying lawsuit.